UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LINDA RODGERS. | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs*. | ) | 1:11-cv-00306-JMS-DML |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
|     *Defendant*. | ) | |

## ORDER

Presently before the Court is Defendant's Motion for Partial Judgment on the Pleadings which the Court grants in part, and Motion for Summary Judgment, [dkt. 83], which the Court denies for the reasons that follow.

### I.
### FACTUAL BACKGROUND

The record as submitted by the parties established the following facts which are either undisputed or supported by admissible evidence and viewed in the light most favorable to Ms. Rodgers, the non-movant:  In 1999, Ms. Rodgers, an African American woman, began working for Defendant Eli Lilly and Company ("Lilly") as an Operator in the Parenteral Packaging Department. [Dkt. 84 at 2.] Lilly hired her as a Pay Grade Level 26 employee with a starting salary of $28,080. [*Id*.] In the Parenteral Packaging Department, operators are responsible for running, setting up, and cleaning the packaging machines. [*Id*.]  The next position in the hierarchal structure above Operators is that of Line Leader, which is the first level of supervision on the floor. [*Id*.]  Line Leaders are expected to resolve employee issues on the production lines, participate in Operators' performance management, and initiate events in a computer system for reporting irregularities. [*Id*. at 2-3.]

There are a limited number of Line Leaders per shift, and some Operators may perform duties as Line Assistants. [*Id*. at 3.] Line Assistants run the line and ensure that packaging documentation is in order, but they do not have a distinct position within the department and are still responsible for operating machines on the lines. [*Id*.]

In or about 2001, Ms. Rodgers began performing Line Assistant duties, including running the production lines, instructing other employees, giving assignments, and doing paperwork. [*Id*.] During the time that she performed Line Assistant duties, Ms. Rodgers applied multiple times for a Line Leader promotion, including twice in 2002, for positions that ultimately went to Judy West, a Caucasian woman, and Mike Bohall, a Caucasian man. [*Id*. at 3-4.]

At Lilly, both "bona fide" promotions and "in-line" promotions may be awarded. [*Id*. at 6.] While a bona fide promotion is a move from one position to another after an employee has successfully applied for the new position, an in-line promotion involves a promotion from a lower pay grade level ("PGL") to a higher one based on several factors: "(1) an employee's performance in the promotion year and performance since a previous promotion relative to peers; (2) the amount of time the employee has been at her current PGL; and (3) affordability, taking into account that a department has a limited number of promotions to award each year." [*Id*.] Ms. Rodgers received an in-line promotion from PGL 26 to PGL 28 after 17 months of employment. [*Id*. at 7.] She did not receive another in-line promotion until 2007, when she was promoted from PGL 28 to PGL 30. [*Id*. at 8.]

Also in 2007, Ms. Rodgers was diagnosed with breast cancer. [*Id*.] Lilly granted Ms. Rodgers' request for a medical leave of absence from February 15, 2007 to November 15, 2007. [*Id*.] When Ms. Rodgers returned to work in November 2007, she had temporary lifting,

pushing, and pulling restrictions. [*Id*.] Despite her restrictions, Ms. Rodgers could work as a Line Assistant, which she did. [*Id*.; dkt. 88 at 13.]

In October 2009, Lilly's Human Resources Department told Ms. Rodgers that she needed to find another job or Lilly would "pull the plug." [Dkt. 88 at 14.] In response to this information, Ms. Rodgers requested that her physician remove her medical restrictions, which he did. [*Id*.] Eventually, working without restrictions took a severe physical toll on her, and after her doctor advised her not to continue working without restrictions, she went on medical leave in November 2009. [*Id*.]

Throughout her time at Lilly, Ms. Rodgers alleges that she complained "like a broken record" that Lilly was discriminating against her. [*Id*. at 13.] In or about 2003, Ms. Rodgers complained to Lilly Human Resources that she was working as a Line Leader, but that, due to her race, Lilly failed to promote her to the position or pay her accordingly. [*Id*.] Ms. Rodgers lodged the same complaint to Ryan Robinson in Human Resources several times. [*Id*.] Ms. Rodgers also complained to Dave Walker in Human Resources that, due to race discrimination, Lilly did not promote her to the positions for which she had applied. [*Id*.] She also lodged complaints to managers Steve (Greg) Magnusen and John Mossip. [*Id*.] On September 8, 2008, Ms. Rodgers joined the *Welch et. al. v. Eli Lilly and Company* litigation as a named plaintiff.

## II.
### PROCEDURAL BACKGROUND

The operative complaint in this matter was filed on December 14, 2010. *See Welch v. Eli Lilly & Company*, 1:06-cv-00641-RKY-DML (S.D. Ind. 2010) [dkt. 541 at 2-3]. ("The Second Amended Class Complaint is the operative complaint in this action .... The Second Amended Complaint cannot be amended without leave of court, or agreement of parties, in the individual cases.") Because of the unique history of this case (a spinoff of an earlier attempted, but never

certified, class action), the deadline to amend was June 6, 2011.  At no time prior (or since) did Ms. Rodgers move to amend the Complaint.

In her Complaint, Ms. Rodgers alleged that Lilly engaged in race discrimination and retaliation in violation of 42 U.S.C. § 1981.  [Dkt. 1.]  On November 15, 2012, the Court ordered Ms. Rodgers to file a statement listing the specific adverse actions she is asserting to support her claim of race discrimination and identify any adverse employment actions she is no longer pursuing.  [Dkt. 77.]  Five days later, Ms. Rodgers filed her Statement of Adverse Employment Actions and stated that she is asserting the following adverse employment actions:

- Lilly did not pay Ms. Rodgers as a Line Leader, even though she worked as a Line Leader.

- Lilly failed to award Ms. Rodgers in-line promotions at the same rate as similarly situated employees.  She did not receive in-line promotions in 2002, 2003, 2004, 2005 or 2006.

- Lilly failed to promote Ms. Rodgers to a Line Leader position (Position No. 28653), for which she applied in 2002.

- Lilly failed to accommodate Ms. Rodgers' medical disability.

[Dkt. 78.]  On December 19, 2012, Lilly filed the presently pending motion for Partial Judgment on the Pleadings and Summary Judgment.  [Dkt. 83.]

### III.
#### DISCUSSION

Through the pending motion, Lilly moves for "partial judgment on the pleadings on any claims not expressly included in [the Complaint], and for summary judgment on all [Ms. Rodgers'] claims."  [Dkt. 83.]  The Court will consider each motion separately.

**A. Motion for Partial Judgment on the Pleadings**

Lilly has first moved for partial judgment on the pleadings on any claims not expressly included in Ms. Rodgers' Complaint.  [Dkt. 83 at 1.]  Specifically, Lilly challenges whether Ms.

Rodgers' Complaint sufficiently alleges claims for failure to accommodate, failure to promote to Line Leader, and failure to grant in-line promotions. [*Id.*]

Where, as here, a motion for judgment on the pleadings attacks the sufficiency of the complaint, the motion "is subject to the same standard as a motion for dismissal for failure to state a claim." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989). That standard, under the Supreme Court's recent re-interpretation of Federal Rule of Civil Procedure 8(a)(2), requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted). Accordingly, the Court disregards naked legal conclusions when examining the sufficiency of the complaint. *Id.* at 1949-50.

### 1. Failure to Accommodate

Lilly first seeks partial judgment on any claim Ms. Rodgers purports to have for failure to accommodate her medical restrictions, arguing that not only was the purported claim not present in the operative Complaint, but that the cause of action did not exist at the time the Complaint was filed. [Dkt. 84 at 14-15.] In response, Ms. Rodgers argues that because she is alleging the failure-to-accommodate claim under § 1981, not the Americans with Disabilities Act, it "is merely an additional element of the race discrimination claim sufficiently pled in her Complaint." [Dkt. 88 at 31.]

Here, the operative Complaint is silent on any such claim regarding Ms. Rodgers' medical restrictions. [*See* dkt. 1.] Although Ms. Rodgers argues that "significant portions of discovery were devoted to [her] failure to accommodate claim," [dkt. 88 at 31-32], it is well-settled that the scope of discovery is not a proper indicator of the scope of complaint allegations, as discovery is generally more expansive. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.

340, 351 (1978) ("Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.").

Furthermore, even under the most generous view, a failure-to-accommodate claim could not be read into Ms. Rodgers' Complaint as the underlying issues of Ms. Rodgers' arose in October 2009, more than a year after the operative Second Amended Complaint was filed. *See Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 529 (6th Cir. 2006) ("Simply put, [the plaintiff] could not have asserted a claim that she did not have at the time [her Complaint was filed]."). Because the failure-to-accommodate claim was not present in her Second Amended Complaint, and Ms. Rodgers never sought leave to amend and add such a claim (and was required to so do by earlier court order), the Court finds that Ms. Rodgers is precluded from alleging it in this action. The Court notes however, that it is not issuing any type of judgment in Lilly's favor on any such claim. The Court is simply ruling that such a claim it is not part of this case.

### 2. Failure to Promote to Line Leader

Lilly also challenges the sufficiency of Ms. Rodgers' claim that she was denied a Line Leader position in 2002 due to racial discrimination. [Dkt. 84 at 15-18.] A review of Ms. Rodgers' Complaint demonstrates the sufficiency of her allegations supporting this claim. Specifically, Ms. Rodgers alleges, "In 2002, Ms. Rodgers applied for a Line Leader position, but was turned down in favor of a white employee whom she had trained." [Dkt. 1.]

Although Lilly argues that the Line Leader position referenced later in Ms. Rodgers' Statement of Adverse Actions was given to Mike Bohall, a white male, rather than a white female, that gender difference is not fatal to Ms. Rodgers' claim. The apposite portion of the

Complaint identifies a 2002 Line Leader position for which Ms. Rodgers applied and was passed over for allegedly racial reasons, and while Ms. Rodgers may have sought two different Line Leader positions that year, the Court will not quibble over which of the two white individuals granted Line Leader positions in 2002– a white male or a white female – Ms. Rodgers referenced in her Complaint.  The Court therefore finds that Lilly is not entitled to judgment on the pleadings with respect to this claim.

### 3.  Failure to Grant In-Line Promotions

Lastly, Lilly seeks judgment on the pleadings with respect to Ms. Rodgers' claim for failure to grant in-line promotions.  [Dkt. 84 at 18-19.]  Again, a review of Ms. Rodgers' Complaint demonstrates the sufficiency of her allegations supporting this claim.  Specifically, Ms. Rodgers alleges under a section titled "Violation of 42 U.S.C. § 1981, As Amended," that Lilly "grooms white employees for rapid promotion and did not provide [her] with the same opportunities because of her race" and "promotes most white employees early and often and did not provide [her] the same opportunities because of her race."  [Dkt. 1 at 3.]

Under the notice-pleading standard set forth by Federal Rule of Civil Procedure 8, Lilly can hardly argue that Ms. Rodgers' allegations were insufficient to put it on notice of her claim that she was discriminated against and denied in-line promotions because of her race.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the [plaintiff] need only 'give the defendant fair notice of what the claim is and the grounds on which it rests.'") (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) (alteration omitted)) (per curiam).  Accordingly, the Court finds that Lilly is not entitled to judgment on the pleadings with respect to Ms. Rodgers' §1981 claims for failure to grant in-line promotions, except the 2002 claim, which, for reasons detailed below the Court agrees is time-barred.

Lilly has adduced evidence showing that in-line promotion eligibility for 2002 was determined in approximately December 2001 and that the awards were effective April 1, 2002. [Dkt. 84 at 29; 84-3 at 18.] Because the first *Welch et al.* complaint was filed on April 20, 2006, more than four years after the alleged cause of action accrued, it is time-barred. However, Ms. Rodgers' claims for in-line promotions in 2003, 2004, 2005, and 2006 are viable.

### B. Motion for Summary Judgment

Lilly has also moved for summary judgment on all of Ms. Rodgers' claims. The Court will consider in turn Ms. Rodgers' claims for failure to promote to Line Leader and failure to grant in-line promotions.

#### 1. Standard of Review

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

### 2. Analyzing § 1981 Claims on Summary Judgment

Ms. Rodgers asserts claims pursuant to 42 U.S.C. § 1981. [Dkt. 1.] To overcome Lilly's motion for summary judgment on her § 1981 claims, Ms. Rodgers may proceed by either providing direct evidence of discrimination, *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), or by showing indirect evidence under the burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See*

*Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999) (holding that to analyze a § 1981 claim on summary judgment, "we employ the same framework that we use with respect to Title VII claims"). Ms. Rodgers relies on the indirect method.

To survive summary judgment, Ms. Rodgers must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Specifically, she must show that (1) she was a member of a protected class, (2) that she adequately performed her employment responsibilities, (3) that despite adequate performance, she suffered an adverse employment action, and (4) that she received different treatment than similarly situated persons who were not members of the same protected class. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007) (citation omitted). If Ms. Rodgers can make that showing, the burden shifts to Lilly to come forth with a "legitimate, non-discriminatory reason" for its actions. *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010) (citation omitted). If Lilly can do so, it will prevail unless Ms. Rodgers can come forward with evidence that the proffered non-discriminatory reason is "a pretext for intentional discrimination." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 551 (7th Cir. 2011) (citation omitted).

The similarly-situated inquiry and the pretext inquiry "are not hermetically sealed off from one another." *Coleman v. Donahoe*, 667 F.3d 835, 857-58 (7th Cir. 2012). Often, "the prima facie case and the pretext analyses overlap," and the "the similarly-situated inquiry dovetails with the pretext question." *Id.* at 858. Under those circumstances, "comparator evidence can do 'double-duty' at both the prima facie and pretext stages." *Id.*

### 1. Failure to Promote to Line Leader

The parties do not dispute that Ms. Rodgers is a member of a protected class or that lower pay is an adverse employment action. [Dkts. 84 at 27-33; 88 at 1.] It is also undisputed that Ms.

Rodgers satisfactorily performed her responsibilities throughout her tenure at the company. [Dkts. 84 at 7-8; 88 at 24.] The parties dispute only whether Ms. Rodgers can show that Lilly hired a less or equally qualified candidate.

Ms. Rodgers argues that Mike Bohall, the Caucasian man to whom Lilly granted the Line Leader position in 2002 instead of Ms. Rodgers, is less or equally qualified than she is because at the time of Mr. Bohall's promotion, the two had held the same operator job at PGL 28 since 1999 and had both had prior supervisory experience at another company. [*Id*. at 25-26.]

During the summary judgment inquiry, the Court is "looking for comparators, not clones." *Coleman*, 667 F.3d at 846. As long as distinctions between the plaintiff and the proposed comparator are not "so significant that they render the comparison effectively useless," the similarly-situated requirement is satisfied. *Id.* Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when "no reasonable fact-finder could find that plaintiff [has met her] burden on the issue." *Id.* at 847.

Lilly argues that because the extent of Mr. Bohall's supervisory experience was greater than Ms. Rodgers, he was the more qualified operator. [Dkt. 84 at 25.] However, to establish a prima facie case for discrimination and rebut Lilly's non-discriminatory explanation that Mr. Bohall's supervisory experience was the reason he was chosen instead of her, Ms. Rodgers need not demonstrate that the two were exact duplicates. *Coleman*, 667 F.3d at 846. Furthermore, Ms. Rodgers has pointed out other ways in which her qualifications exceeded Mr. Bohall, including her bachelor's degree and her prior experience as a Line Assistant. [Dkt. 88 at 25-26.] Under the common-sense standard iterated by the Seventh Circuit in *Coleman*, the Court finds the above commonalities sufficient to permit a meaningful comparison and to allow the inference that intentional discrimination may be at play. 667 F.3d 846-47. Therefore, Ms. Rodgers has

both established a prima facie case for discrimination and rebutted Lilly's proffered legitimate, non-discriminatory explanation for their disparate pay.

### 2. *Disparate Pay for Work Performed*

Ms. Rodgers also alleges a claim for discriminatory pay because she performed the duties of a Line Leader but was not paid as such. [Dkt. 1.] Again, the parties do not dispute that lower pay is an adverse employment action or that Ms. Rodgers was performing satisfactorily in her position. Rather, Lilly argues that Ms. Rodgers cannot allege a claim for disparate pay because she "has never been selected for a Line Leader position," and "[e]mployees cannot unilaterally choose a position, begin performing the work of that position, and then turn around and demand that they be paid for that position." [Dkt. 84 at 20.]

Contrary to what Lilly argues, it is not dispositive that Ms. Rodgers was not formally titled a Line Leader. *Rodgers v. White*, 657 511, 518 (7th Cir. 2011). "Formal job titles and ranks are not dispositive; an employer cannot insulate itself from claims of racial discrimination by making formalistic distinctions between employees." *Id.* (internal quotation omitted). Lilly's characterization that Ms. Rodgers "unilaterally" assumed additional duties contradicts the undisputed evidence that Lilly trained Ms. Rodgers for the additional duties she describes. [Dkt. 88 at 23.] Furthermore, disputes of fact exist regarding whether Ms. Rodgers performed the essential duties of a Line Leader, [dkts. 84 at 21-22; 88 at 7-8], and on summary judgment, the Court must resolve any disputes in Ms. Rodgers' favor. *Celotex*, 477 U.S. at 330.

With these disputes of fact, coupled with Ms. Rodgers' identification of Caucasian Line Leaders Dave White, Larry Wilhoite, Jim Glyn, and Debbie Smith as comparators, Ms. Rodgers has satisfied her burden of a prima facie showing of discriminatory pay and rebutted Lilly's proffered explanation that she "was not paid as a Line Leader <u>because she was not a Line</u>

Leader." (emphasis in original). *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007) (holding that a reasonable jury could find that a plaintiff was similarly situated to a co-worker with a different title where they "worked together on the same machine, produced the same output, and worked the same shift").

Because Ms. Rodgers has offered admissible evidence to establish a prima facie case and rebut Lilly's proffered non-discriminatory explanation, Lilly is not entitled to summary judgment for her disparate pay claim under § 1981. Accordingly, the Court denies its motion with respect to that claim.

### 3. Failure to Grant In-Line PGL Promotions

As discussed above, Ms. Rodgers' claims for failure to grant her PGL promotions in the years 2003 to 2006 are viable. Lilly seeks summary judgment on these claims, arguing for various reasons that Ms. Rodgers did not merit a promotion in those years. [Dkt. 84 at 27-33.] Again, because the parties do not dispute that Ms. Rodgers is a member of a protected class, that lower pay is an adverse employment action, and that Ms. Rodgers was performing satisfactorily in her position, the only issue remaining is whether Ms. Rodgers can point to similarly situated comparators who were not of a protected class and who were treated differently than she was.

Ms. Rodgers offers as comparators Poppy Fouts and David Cuffel, who received raises more rapidly and in years that she did not. [Dkt. 88 at 10-12.] Ms. Rodgers argues that she is similarly situated to Ms. Fouts and Mr. Cuffel because those two employees: 1) were hired under the same operator title as Ms. Rodgers; 2) performed essentially the same job duties as Ms. Rodgers; 3) were supervised by the same individual; and 4) received raises from the same decision-makers who decided whether Ms. Rodgers would receive a raises. [*Id.*]

-13-

As already noted, the Court is "looking for comparators, not clones." *Coleman*, 667 F.3d at 846. As long as distinctions between the plaintiff and the proposed comparator are not "so significant that they render the comparison effectively useless," the similarly-situated requirement is satisfied. *Id.* Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when "no reasonable fact-finder could find that plaintiff [has met her] burden on the issue." *Id.* at 847.

In its reply, Lilly argues that Ms. Fouts and Mr. Cuffel are not proper comparators because they were promoted in different years than she was, and promotions are based relative to the performance of others in the same year. [Dkt. 95 at 13.] However, to establish a prima facie case for discrimination and rebut Lilly's non-discriminatory explanation that her performance did not merit a raise, Ms. Rodgers need only provide comparators, not exact duplicates. *Coleman*, 667 F.3d at 846. Again applying the common-sense standard iterated by the Seventh Circuit in *Coleman*, and given the substantially similar work histories of the two comparators to Ms. Rodgers' history and their overall more rapid promotion, the Court finds the above commonalities sufficient to permit a meaningful comparison and to allow the inference that intentional discrimination may be at play. 667 F.3d 846-47. Therefore, Ms. Rodgers has both established a prima facie case for discrimination and rebutted Lilly's proffered legitimate, non-discriminatory explanation for its disparate pay.

## IV.
### CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Defendant's Motion for Partial Judgment on the Pleadings and **DENIES** its Motion for Summary Judgment. [Dkt. 83.] Ms. Rodgers' 2002 claim for in-line promotion is time-barred, and Lilly is entitled to judgment on the pleadings on that claim. Ms. Rodgers has not alleged a claim for failure to accommodate

in the operative complaint, and never sought leave to amend despite a court order requiring her to do so, and so this case will not be construed to include a failure to accomodate claim. Ms. Rodgers has raised genuine issues of fact as to her claims of failure to promote to Line Leader, disparate pay, and failure to grant in-line promotions from 2003 to 2006, and those claims do survive for trial. No partial judgment shall issue.

05/22/2013

*Hon. Jane Magnus-Stinson, Judge*
*United States District Court*
*Southern District of Indiana*

**Distribution via ECF:**

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Ellen E. Boshkoff
FAEGRE BAKER DANIELS LLP - Indianapolis
ellen.boshkoff@faegrebd.com

Benjamin C. Ellis
BETZ & BLEVINS
bellis@betzadvocates.com

Rozlyn M. Fulgoni-Britton
FAEGRE BAKER DANIELS LLP - Indianapolis
rozlyn.fulgoni-britton@faegrebd.com

Kate Mueting
SANFORD HEISLER, LLP
kmueting@sanfordheisler.com

Matthew Louis Schmid
SANFORD HEISLER, LLP
mschmid@sanfordheisler.com